**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RACHEL B.,**

        **Plaintiff,**

                                **Civil Action 2:23-cv-2341**
      **v.**                         **Chief Judge Algenon L. Marbley**
                                **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Rachel B., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff previously applied for DIB and SSI on November 30, 2011. On October 9, 2013, administrative law judge Thomas L. Wang ("ALJ Wang") issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 83-101.)

Plaintiff filed her current applications for DIB and SSI on October 7, 2021, alleging that she has been disabled since October 7, 2019, due to post-traumatic stress disorder, anxiety, depression, migraines, trigeminal neuralgia, diverticulitis, and irritable bowel syndrome. (R. at 258-270, 280.) Plaintiff's applications were denied initially in December 2021 and upon reconsideration in February 2022. (R. at 108-151.) On August 26, 2022, administrative law judge Noceeba Southern ("ALJ Southern") held a telephone hearing, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 52-82.) A vocational expert ("VE") also appeared and testified at the ALJ hearing. (*Id.*) On September 15, 2022, ALJ Southern issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 27-51.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

*** [Plaintiff] testified that she is unable to work due to constant left leg and lower back pain, abdominal pain, and migraines. Regarding her migraines, she reported worsening symptoms in the past few years including light and sound sensitive, confusion, nausea, and fog, which occur six times per week for a few hours up to a full day. [Plaintiff] reported a trigeminal neuralgia diagnosis since May 2021, with daily symptoms including, pain in her scalp and face, feelings of heat in the left side of her face, tooth pain, blurred vision, watering eyes, and sensations of electricity shooting up her face. [Plaintiff] reported issues with constipation, diverticulitis, abdominal pain, and acid reflux. [Plaintiff] also noted carpal tunnel symptoms in her left hand, with limited griping and fine manipulating ability and the ability to lift 10-15 pounds. [Plaintiff] stated she can stand for 15-20 minutes, can sit for 30 minutes, and that her most comfortable position in laying down, which she does for about five hours per day. [Plaintiff] reported use of 19 daily medications with side effects from medications including drowsiness, nausea, confusion, loss of balance, lightheadedness, and increased heart rate and fluttering.

[Plaintiff] indicated she takes a daily nap of "a couple of hours" and sleeps around 5 hours per night.

[Plaintiff] endorsed a history of depression and anxiety, and has a new diagnosis of post-traumatic stress disorder, with symptoms including irritability anger, fear, social anxiety, and distancing from others. [Plaintiff] stated she does not go out with friends, has no social life, and wants to find herself again. [Plaintiff] indicated she lives with her partner, maintains a driver's license, but drives only once or twice per week to doctor's appointments due to nervousness and side effects of medication. [Plaintiff] endorsed difficulty brushing her hair, is unable to cook or clean herself when having severe confusion or other neurological symptoms, and is able to help pick up things around her home every once in a while.

(R. at 36-37.)

## B. Relevant Medical Records and Opinions

The ALJ summarized the relevant medical records as to Plaintiff's physical impairments

for the relevant period beginning in 2019 as follows:

Review of the record reveals a history of morbid obesity with a body mass index greater than 50. Physical examination in October 2019, was notable for a BMI of 52.8 based on a height of 5 feet 8 inches and weight of 347 pounds, normal muscle tone and coordination, and 5/5 strength in the bilateral upper extremities. Notes in March 2020 showed [Plaintiff] reporting no problems, looking for employment as a phlebotomist, endorsing use of recreational marijuana, as well as being able to work out twice per week at Planet Fitness using a treadmill and elliptical. Physical examination was entirely unremarkable but for a BMI of 50.6, with [Plaintiff] counseled regarding lifestyle changes and weight management.

On September 14, 2020, [Plaintiff] reported to her primary care provider with complaints of back pain after having been involved in a motor vehicle accident two days prior. In addition to musculoskeletal pain, [Plaintiff] reported tension type headaches and use of an Albuterol inhaler for allergies but having not used it this year. [Plaintiff] was treated symptomatically with a short course of Percocet, and was counseled regarding establishing with behavioral health for reported fear of driving and flashbacks associated with the accident. Follow up in the same month showed [Plaintiff's] accident-related pain controlled with medication, with physical therapy advised and a referral provided. Notes on October 23, 2020, showed [Plaintiff] continued to report radicular back pain which was aggravated by activity, and inability to comply with ordered physical therapy due to insurance issues. [Plaintiff] also noted continued headaches which started since her accident occurring 3-4 days per week and lasting nearly the entire day. The note referenced a CT imaging study from September 2020 which showed a lumbosacral transition

anomaly with 4 type lumbar vertebral bodies and sacralization of L5. [Plaintiff] was prescribed Naproxen, Tylenol, and Flexeril, with electrical stimulation of her lumbar region provided, and stretching exercises advised.

Family medicine notes in January 2021, showed [Plaintiff] presenting via telemedicine consultation for back pain and pain in the left lower extremity, with [Plaintiff] endorsing trying to exercise more and increase the amount she is walking. A trial of physical therapy was ordered as well as over the counter medication for pain. Notes in March 2021, reflected [Plaintiff] continued on her Albuterol inhaler as needed for mild intermittent asthma without complication.

On May 7, 2021, [Plaintiff] underwent pulmonary function testing, in the context of complaints of allergies and asthma symptoms and regular use of marijuana, with findings showing normal spirometry, slightly low peak expiratory flow rates, and normal volumes. Astelin nasal spray was added to [Plaintiff's] regimen with environmental control also advised. Pulmonary function testing was again repeated on June 4, 2021, which was again normal with no obstruction, and continued medication management for mild asthma advised.

On June 8, 2021, [Plaintiff] was seen in the emergency department with complaints of headache and feeling foggy. [Plaintiff] was treated symptomatically with a migraine cocktail, with CT imaging of the head revealing no obvious abnormality. Primary care follow up on June 10, 2021, showed [Plaintiff's] headaches were chronic but well controlled without abortive or prophylactic medications, and were associated with multifactorial etiology with the "most significant factor" likely medication overuse, with [Plaintiff] counseled regarding the same.

On June 19, 2021, [Plaintiff] reported to the emergency department with complaints of left facial pain, hot burning sensation, paresthesias, and itching. Physical exam was notable for a BMI of 48.6, left cheek and chin erythema, no fascial muscle weakness, and no evidence of rash. [Plaintiff] was advised that this could represent possible trigeminal neuralgia, and was prescribed a course of Depakote and referred to neurology for additional evaluation. Neurology notes on July 6, 2021, showed [Plaintiff] evaluated for pressure-like head pain in the left side of the head/forehead and flushing of the left side of the face. Examination notes reflected [Plaintiff's] pain was atypical for trigeminal autonomic cephalalgias with paroxysmal hemicrania a possibility, with physical examination generally unremarkable. [Plaintiff] was noted as improved on Carbamazepine with a trail of Indomethacin discussed should that fail.

On August 24, 2021, [Plaintiff] reported to the emergency department with complaints of pain with breathing in the context of a history of asthma, weekly marijuana use, and a morbidly obese body habitus. Physical exam was notable for normal heart sounds, normal pulmonary effort, normal breath sounds, with no stridor, wheezing, rhonchi, or rales. Etiology was thought not to be related to cardiac or pulmonary issues, with [Plaintiff] treated symptomatically for

4

gastroesophageal reflux disease with some improvement.

On September 18, 2021, [Plaintiff] again presented to the emergency department reporting involvement in a motor vehicle accident with complaints of neck and shoulder pain. Physical exam was notable for tenderness over the right shoulder to palpation, ambulation with a steady gait, and elevated blood pressure. [Plaintiff] was treated symptomatically with Ativan for anxiety, Flexeril for home use, and encouraged to use Ibuprofen.

Primary care notes in October 2021, showed [Plaintiff] reporting improvement in her back pain with osteopathic manipulative therapy, which was well managed without medication. However, [Plaintiff] did reported exacerbation of trigeminal neuralgia with intermittent paresthesia of the left face. Physical examination as generally unremarkable, with continued osteopathic manipulative therapy advised. By November 9, 2021, [Plaintiff] endorsed resolution of her current recurrence of trigeminal neuralgia with Carbamazepine and osteopathic manipulative therapy. [Plaintiff] continued to endorse good control of her trigeminal neuralgia symptoms in December 2021, albeit experiencing intermittent tingling sensations on the forehead. Osteopathic manipulative therapy was provided for [Plaintiff's] associated neck pain.

Primary care notes in January 2022, showed [Plaintiff] reporting shortness of breath, in the context of two prior COVID episodes, and a history of mild asthma, with Spiriva added to [Plaintiff's] Symbicort and Albuterol regimen. Emergency department notes in the same month showed complaints of back pain, with lumbar spine tenderness but otherwise completely unremarkable physical examination findings. Follow up in February 2022, showed both well controlled lower back pain and trigeminal neuralgia with osteopathic manipulative therapy and medications, with again generally unremarkable physical examination findings.

[Plaintiff] established with a new primary care provider in March 2022, alleging a history of diagnosis of trigeminal neuralgia of the left side of her face, cluster headaches suspected to be related to pseudotumor, dyspnea on exertion despite allegedly normal pulmonary function testing, and a morbidly obese body habitus. Physical examination was notable for a BMI of 53.5 and severe obesity, normal breath sounds and pulmonary effort, normal musculoskeletal range of motion, no focal neurological deficit, a normal mood, normal behavior, and normal thought content. [Plaintiff] was encouraged to follow up with neurology, counseled regarding diet and lifestyle modifications, and encouraged for weight loss. Endocrinology notes in the same month showed [Plaintiff] was advised to undergo evaluation for difficulty with weight loss, despite allegedly exercising 30-45 minutes of exercise per day. Physical exam was notable for a BMI of 52.3, with no appreciable musculoskeletal defects, and was otherwise completely unremarkable.

Neurology notes in April 2022 showed [Plaintiff] reporting 19-instances of a hot sensation on the left side of her face as well as occasional electric shock sensation,

which migrated to the right side of her face. She did note improvement with Carbamazepine as it related to her electric sensations, but not facial flushing and heat, but was currently weaning to determine if symptoms recurred. Neurological exam was unremarkable although not complete due to the nature of telemedicine visits. [Plaintiff's] symptoms were noted as suggestive of trigeminal neuralgia and possible small fiber neuropathy, but wanting other rheumatologic diseases ruled out with additional testing ordered.

MR angiogram notes On June 6, 2022, showed a blood vessel close to, or touching her left cranial nerve that provides sensation to the face, which would likely cause trigeminal neuralgia, with continued use of Carbamazepine advised. However, additional neurology notes showed that [Plaintiff] was actually suspected of having a condition known as short-lasting unilateral neuralgiform headache attacks with conjunctival injection and tearing (SUNCT), or alternatively, short-lasting unilateral neuralgiform headache attacks with cranial autonomic symptoms (SUNA). [Plaintiff] was referred to a specialist for treatment of these conditions.

Notes on July 19, 2022, showed [Plaintiff] provided osteopathic manipulative therapy for her headaches and chronic pain. Physical examination showed a BMI of 53.8, normal musculoskeletal range of motion, no neurological deficits, and no motor weakness. Follow up on August 16, 2022, showed [Plaintiff] again receiving osteopathic manipulative therapy for her headaches with improvement reported.

(R. at 37-40, internal citations omitted.)  The ALJ also summarized the relevant medical records

as to Plaintiff's alleged mental impairments for the relevant period beginning in 2019 as follows:

Turning to [Plaintiff's] alleged mental impairments, the record reflects conservative and limited treatment during the period at issue. [Plaintiff] endorsed depression, anxiety, and flashback memories in September 2020 associated with a lawsuit from a motor vehicle accident in which she was involved. Given the acute nature of the current reaction, medication was not indicated with [Plaintiff] encouraged to follow up with a counselor. Primary care notes in October 2020, showed [Plaintiff] reported trouble with sleep due to anxiety, but improvement in [Plaintiff's] acute stress reaction after meeting with her counselor. Vistaril was prescribed for sleep issues, with notes that [Plaintiff's] sleep should improve as her musculoskeletal pain and acute stress reaction continues to improve.

Counseling notes in October 2020 showed [Plaintiff] was able to participate in cognitive behavioral therapy, went shopping, hung out with her friends, and got her nails done. Notes later in the same month showed [Plaintiff] had "almost got in a car accident" and had been triggered by it with therapy offered to help [Plaintiff] process her thoughts and anxiety. Follow up in November 2020 showed [Plaintiff] was feeling overwhelmed by "the stress of everything," and having experiences two panic attacks, but was setting boundaries with parents, and had an overall better

mood as a result. On November 19, 2020, [Plaintiff] endorsed stress related to her mother's health as well as her own search for a job. [Plaintiff] continued to note stressors related to spending the holidays with her family, with support offered for the same.

By January 2021, [Plaintiff] reporting doing well, and not feeling very anxious about her upcoming court date for her motor vehicle accident, had a positive experience during the holidays setting but boundaries with her parents, was happy in her personal relationship, and was still job searching. Unfortunately, notes by the end of the month reflected [Plaintiff] contracted COVID which had caused her lots of distress and multiple panic attacks. Continued psychoeducation on depression and anxiety symptoms as well as cognitive behavioral therapy was provided. In March 2021 [Plaintiff] reported feeling very support by her partner and friends, and happy with the boundaries she was setting with others, as well as having just started medication, specifically Paxil. Primary care notes in March 2021, reflected [Plaintiff] reporting using her medication as directed most of the time, with continued medication management advised. Notes on April 12, 2021, showed [Plaintiff] reporting struggling with anger and having a fear of dying, but felt like she was doing "decent on medications[.]" [Plaintiff] also endorsed use of marijuana on a regular basis for "chronic pain" with notes that it can increase anxiety, but that [Plaintiff] had a partner of 10 years, with friends who have become like family, and two dogs. Mental status examination was notable for: an appropriate appearance; good eye contact with an appropriate and cooperative demeanor; unremarkable speech; a full range affect; reported sad/nervous/anxious/worried mood; obsessive thought content; linear thought process; alert attention and fully oriented; appropriate insight and judgment; and grossly intact memory. Counseling and care coordination were provided. Follow up on April 26, 2021, showed [Plaintiff's] Paxil dose was increased due to personal and familial stressors and reports of panic attacks.

Notes in May 2021 showed [Plaintiff] traveled to Florida with her partner, was able to manage difficulties with a rental car and house, and continued to feel overwhelmed and anxiety. [Plaintiff] was counseled regarding self-soothing and boundary setting as well as utilizing her calm place. In June 2021, [Plaintiff's] medication regimen was modified to include a mood stabilizer for continued symptoms of anxiety and depression, as well as an increase in Paxil. Notes in September 2021 showed [Plaintiff] was in a second car accident, which triggered a panic attack, with [Plaintiff] feeling very manic, overwhelmed, and jittery with a racing mind. Mental status examination was notable for an anxious and depressed mood, but was otherwise wholly unremarkable. [Plaintiff's] medication management was continued with Seroquel and Paxil ordered. Counseling notes through November 2021 showed continuing reports of depression and anxiety with solution focused therapy offered for the same. Records in February 2022 showed [Plaintiff] reporting improved moods, despite personal stressors, and using coping skills including "spoons and journaling[.]"

[Plaintiff] established with a new primary care provider in March 2022, who switched medication regimen to Cymbalta for anxiety related symptoms. Mental status examination during this visit showed [Plaintiff] with a normal mood, normal behavior, normal thought content, and alert and oriented to person, place, and time. Counseling notes in April 2022, showed [Plaintiff] reporting difficulty sleeping, possibly connected to anxiety, and was attempting to establish with a new psychiatrist for possible Xanax or Ativan. Cognitive behavioral therapy was provided for frustrations related to being unable to complete ordered medical testing due to weight limits. Notes in July 2022, showed [Plaintiff] reporting increased irritability and overwhelmed in the context of her health concerns, as well as an aunt staying in her home while she recovered from surgery. [Plaintiff] was provided feeling validation and emotional support.

On March 29, 2022, [Plaintiff] underwent a psychiatric evaluation with Meredith Mahilo, M.D., alleging depression, anxiety, panic, and trauma, as well as seeking out a new medication prescriber due to lack of progress with her symptoms. [Plaintiff] endorsed living with her partner and being together for 11 years, a history of marijuana use, exercising 1-2 time per week, and a history of work as a bus driver and phlebotomist. Mental status exam was notable for anxious mood; good eye contact with cooperative behavior; appropriate dress, grooming, and hygiene; normal, articulate, and fluent speech; intact associations and logical goal directed thought processes; a good and intact memory; intact fund of knowledge; intact attention span; and good insight and judgment that was not impaired. [Plaintiff] was diagnosed with depression, anxiety, and post-traumatic stress disorder, with notes that [Plaintiff] should continue Paxil, Prazosin, and Hydroxyzine. Notably, [Plaintiff] was seeking to be prescribed benzodiazepines, and was advised to seek out a prescriber for the same, as well as abstain from drugs and alcohol, and engage in therapy as needed. In April 2022, [Plaintiff's] medication regimen was modified to include Rexulti, continued use of Paxil, and a short-term order for Clonazepam, with Hydroxyzine discontinued.

Psychiatric progress notes on June 20, 2022, showed [Plaintiff] had been in a decent mood despite having run out of Rexulti, Paxil, and Prazosin, and that her anxiety symptoms had been better with no recent panic attacks. [Plaintiff's] medications were refilled, with lifestyle modifications also counseled.

(R. at 40-42, internal citations omitted.).) The ALJ then summarized and discussed the prior administrative medical findings as follows:

The [ALJ] has considered the State agency medical consultant's opinions which adopted the prior Administrative Law Judge's findings and found [Plaintiff] limited to a reduced range of light exertion work; no climbing of ladders, ropes, or scaffolds; frequent handling and fingering; and must avoid even the moderate use of hazardous machinery and unprotected heights. The [ALJ] has found these

assessments unpersuasive. There is no evidence of any significant complaints of or treatment for previously assessed impairments from the prior decision, and therefore, deviation from those findings is warranted. As reflected above the [ALJ] has neither adopted the prior Administrative Law Judge's findings and has entered appropriate severe impairments and functional limitations consistent with the current evidence of record for the period at issue.

The [ALJ] has also considered the State agency psychological consultant's opinions which initially and at reconsideration found [Plaintiff] able to understand and remember simple, 1-3 step tasks; carry out tasks in situations where job duties are relatively static and changes can be explained; interact on an occasional, superficial basis with coworkers, supervisors, and the general public; and would perform optimally in an environment without frequent changes in job duties, demands for fast pace, or high production quotas. The [ALJ] has found these assessments persuasive. As reflected above, [Plaintiff's] symptoms were managed with medications prescribed by her primary care and mental health providers, with additional counseling. However, the [ALJ] has provided further specification regarding the superficial limitations in social functioning to adequately describe function consistent with applicable policy, and has further restricted [Plaintiff] with respect to public interaction in deference to subjective reports during testimony and out of an abundance of caution.

(R. at 43-44, citation to record omitted.)

## III.    ADMINISTRATIVE DECISION

On September 15, 2022, ALJ Southern issued her decision.  (R. at 27-51.)  First, ALJ

Southern found that Plaintiff meets the insured status requirements of the Social Security Act

through December 31, 2019.  (R. at 33.)  Then, at step one of the sequential evaluation process,[1]

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

ALJ Southern found that Plaintiff has not engaged in substantially gainful activity since October 7, 2019, the alleged onset date. (*Id.*) ALJ Southern then found that Plaintiff has the following impairments that either singularly and/or in combination are severe: lumbar strain/sciatica; trigeminal neuralgia; migraine headaches caused by benign tumor on pituitary gland; asthma; obesity; post-traumatic stress disorder; depressive disorder; and generalized anxiety disorder. (*Id.*) ALJ Southern further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to step four of the sequential process, ALJ Southern set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] can occasionally climb ramps and stairs, but must avoid ladders, ropes, or scaffolds; and must avoid exposure to hazards including moving machinery, heavy machinery, and unprotected heights. [Plaintiff] can perform simple, routine tasks; with occasional changes and occasional decision making in a static environment; changes must be well explained, with few detailed instructions; can have occasional but superficial interaction with coworkers and supervisors with superficial being that which is beyond the performance of job duties and job functions for a specific purpose and short duration; must avoid interaction with the public; can have no assembly line work; and no hourly quotas.

(R. at 35-36.) Then, at step four, ALJ Southern determined that Plaintiff has no past relevant work. (R. at 44.) Relying on the VE's testimony, ALJ Southern then found at step five that

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff can perform other jobs that exist in significant numbers in the national economy such as

a garment sorter, marker, or folder.  (R. at 44-45.)  ALJ Southern then concluded that Plaintiff

was not disabled under the Social Security Act at any time since October 7, 2019.  (*Id.* at 45.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'"

11

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for Plaintiff to overcome. (ECF No. 8 at PAGEID ## 2309-2318.)  According to Plaintiff, while ALJ Southern provided a review of the newly submitted evidence, she improperly did so against the backdrop of ALJ Wang's prior findings, framing her review of the evidence as a question of whether it supported a departure from ALJ Wang's RFC.  (*Id.* at PAGEID # 2311.)  In short, Plaintiff believes ALJ Southern did not merely consider ALJ Wang's prior findings as a legitimate—albeit not binding—consideration, but rather that she was bound by them, absent new and material evidence or changed circumstances.  (*Id.*)  In response, the Commissioner maintains that the ALJ made clear the previous decision was not binding and provided a detailed discussion of the medical evidence from the relevant period, providing the required "fresh look" at a new application.  (ECF No. 9 at PAGEID ## 2324-2333.)  In her Reply brief, Plaintiff maintains that ALJ Southern's substantive review was "irrelevant . . . because she premised her review on the mistaken understanding that she was bound by ALJ Wang's prior findings, absent new and material evidence or changed circumstances."  (ECF No. 10.)

In *Drummond*, the Sixth Circuit held that the principles of res judicata apply to both disability applicants and the Commissioner in Social Security cases.  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997).  Specifically, the *Drummond* Court found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent

ALJ is bound by the findings of a previous ALJ." *Id*. at 842.  In response to *Drummond*, the SSA subsequently issued Acquiescence Ruling 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).  In *Earley,* the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision.  *Id*. at 933.  The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date."  *Id*.  Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look."  *Id*. at 931.  This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision.  After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application."  *Id*. at 933.

Nonetheless, in order to effectuate the intent of *Earley*, a meaningful "fresh look" must provide an applicant with an "opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing."  *Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019); *see also*, *Maynard v.*

*Comm'r of Soc. Sec.*, No. 2:18-CV-959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019),

*report and recommendation adopted*, No. 2:18-CV-959, 2019 WL 3891859 (S.D. Ohio Aug. 16,

2019).  Otherwise, an applicant whose claim is heard before an ALJ applying the presumption

set forth in AR 98-4(6) faces "an unwarranted procedural burden… at the second hearing."  *Id*.

In short, when evaluating a subsequent application for benefits for a distinct period of time, an

ALJ may consider a previous ALJ's RFC assessment but errs "when he considers the previous

RFC a mandatory starting point for the analysis."  *Gale v. Comm'r of Soc. Sec.*, No. 1:18-CV-

859, 2019 WL 8016516, at *5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*,

No. 1:18-CV-859, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020); *see also Dilauro v. Comm'r of*

*Soc. Sec.*, No. 5:19 CV 2691, 2020 WL 9259708, at *10 (N.D. Ohio Nov. 19, 2020), *report and*

*recommendation adopted*, No. 5:19-CV-2691, 2021 WL 1175415 (N.D. Ohio Mar. 29, 2021)

("[T]he ALJ considered this new evidence . . . but from a starting point of evaluating whether it

was compatible with the prior RFC . . . . That violates the statutory framework governing

disability claims."); *Dunn v. Comm'r of Soc. Sec.*, No. 1:17-cv-634, 2018 WL 4574831, at *3

(W.D. Mich.) ("In performing this analysis, ALJ Jones' decision was essentially a review of ALJ

Moscow Michaelson's RFC findings . . . rather than a 'fresh review' of plaintiff's 'new

application for a new period of time.'").

      Here, prior to assessing Plaintiff's RFC determination, ALJ Southern recited the standard

set forth by AR 98-4(6) and *Drummond* as follows:

> In reaching a conclusion regarding whether the claimant is "disabled," the findings
> made in the hearing decision dated October 9, 2013, by Judge Thomas Wang who
> adjudicated the claimant's prior application, and subsequent denial of the Request
> for Review by the Appeals Council have been considered (Exhibits B1A and
> B2A). The findings have been evaluated in accordance with Social Security
> Acquiescence Rulings 98-3(6) and 98-4(6). These Rulings apply to disability
> findings in cases, arising from the same title of the Act as the prior claim, which

14

involve claimants who reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination or decision on the subsequent claim at the initial, reconsideration, Administrative Law Judge hearing, or Appeals Council level. **These Rulings also provide that, in the absence of new and material additional evidence or changed circumstances, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge's or Appeals Council's decision** (Social Security Acquiescence Rulings 98-3(6) and 98-4(6); *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990)). **The undersigned finds that there is new and material additional evidence or changed circumstances and, as such, the undersigned is not bound by the findings of the previous Administrative Law Judge's decision or Appeals Council's action.**

(R. at 30-31 (emphasis added).)

Against that background, Plaintiff's lone assignment of error is not well taken. Plaintiff's entire argument stems from ALJ Southern's statement that "in the absence of new and material additional evidence or changed circumstances . . . [she] is ***bound by*** the findings of [the previous ALJ's decision]." (*See* ECF No. 8 at PAGEID # 2309 (emphasis added).) Plaintiff believes that, given the language "bound by," this statement necessarily establishes that ALJ Southern erred by failing to provide a "fresh look" to the new evidence, but the Undersigned disagrees. Contrary to Plaintiff's belief, citing *Drummond* and misstating the current legal standard is not, per se, evidence that an ALJ failed to give evidence a "fresh look." *Krista L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-144, 2024 WL 1596323, at *6 (S.D. Ohio Apr. 12, 2024) ("[T]o the extent plaintiff argues [the ALJ] used an incorrect legal standard as evidenced by his citation of *Drummond* without the further clarification of *Earley* [], this does not require reversal of the ALJ's decision."); *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023), *report and recommendation adopted sub nom. Mark D. v. Comm'r of the Soc. Sec. Admin.*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023) ("While a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless

15

possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look.") (citations omitted). Accordingly, because Plaintiff argues that such language establishes ALJ Southern's improper consideration of or reliance on ALJ Wang's decision and requires reversal without a substantive analysis of ALJ Southern's decision, Plaintiff's lone assignment of error is not well taken.

To be clear, Plaintiff does not put forth any substantive argument regarding ALJ Southern's actual analysis. That is to say, Plaintiff does not cite to any record evidence which she believes ALJ Southern failed to consider, she does not highlight any instances in which ALJ Southern relied on the prior decision in formulating Plaintiff's RFC, nor has she otherwise shown – or even argued – how ALJ Southern's decision is in error. *See Krista L.*, 2024 WL 1596323, at *6. This is significant, because upon review of ALJ Southern's analysis the Undersigned finds that ALJ Southern clearly did *not* consider herself to be bound by ALJ Wang's decision. Indeed, the only explicit reference ALJ Southern made to the prior decision was when she considered the State agency medical consultant's opinions, which adopted ALJ Wang's previous findings. (R. at 43.) In that discussion, however, ALJ Southern distinguished her analysis from the State agency medical consultant's, and expressly confirmed that she did ***not*** adopt ALJ Wang's findings or use them as a starting point for her analysis, as she instead "entered appropriate severe impairments and functional limitations ***consistent with the current evidence of record for the period at issue***." (*Id.* (emphasis added).) Accordingly, the Undersigned finds that ALJ Southern's decision as a whole reflects that she provided the "fresh look" that *Earley* requires, and also that it is properly supported by substantial evidence.

Because Plaintiff fails to identify any substantive error by ALJ Southern, and because Plaintiff's lone procedural argument is not well taken, the Undersigned will not search for or

16

formulate any other potential reasons to disturb ALJ Southern's decision. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (holding that the Court will not "formulate arguments on the Plaintiff's behalf," but will instead "limit [its] consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits, and her decision was made pursuant to proper legal standards. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 8) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v.*

*Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**DATED:** <u>**July 11, 2024**</u>          <u>  /s/ ***Elizabeth A. Preston Deavers***       </u>
                                          **ELIZABETH A. PRESTON DEAVERS**
                                          **UNITED STATES MAGISTRATE JUDGE**